Andrew **PUTMAN** and Donald
Favors, Appellants,

v.

Sheriff Elmer **GERLOFF** and Deputy
Sheriff Jim Crowe, Appellees.

No. 82–1471.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1983.

Decided March 1, 1983.

Rooney & Walsh by John L. Rooney, St.
Louis, Mo., for appellants.

P. Dennis Barks, Berkemeyer & Barks, Hermann, Mo., and Walter D. McQuie, Jr., Montgomery City, Mo., for appellees.

Before BRIGHT, ARNOLD and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

This case is before the Court a second time. Plaintiffs appeal from a jury verdict for the defendants on retrial after our remand in *Putman v. Gerloff,* 639 F.2d 415 (8th Cir.1981). They sue under 42 U.S.C. §§ 1983 and 1985, claiming that they have been deprived of rights under the Eighth and Fourteenth Amendments. On appeal, plaintiffs contend that the District Court[1] erred in declining to give their proffered jury instruction on civil conspiracy. They further argue they were entitled to a directed verdict against the defendants and that the verdict is flawed because a note sent by the jury to the court revealed that the jurors misunderstood their function. We reject these contentions and affirm the judgment.

### I.

The plaintiffs were prisoners in the Gasconade County Jail in Hermann, Missouri, on June 29, 1976, awaiting trial on a charge of armed robbery. On that date they attempted escape from the jail by using hacksaw blades to cut the bars from a small "feed" door located within the larger, main door to the jail's "bullpen" or main room. They succeeded in removing the bars, and the plaintiff Donald Favors managed to crawl through the feed door into the hallway. The plaintiff Andrew Putman, who is larger than Favors, became stuck in the

door while trying to crawl through. While Putman was lodged in the door, apparently on his back and some four feet above the floor, he and Favors were caught by the defendants, Sheriff Gerloff and Deputy Crowe. The officers had been summoned by a dispatcher who heard a sawing noise and suspected that an escape was in progress. They entered the hallway outside the jail's main cell and took the plaintiffs into custody. In so doing, the defendants alleged, the officers beat and struck them in violation of their right to be free from punishment without due process of law, guaranteed by the Fourteenth Amendment.[2]

Specifically, Favors alleged that Sheriff Gerloff grabbed him by the hair and threw him to the floor. While on the floor he said that someone, whom he could not identify,[3] kicked him in the side. Putman testified that, while lodged in the door, the Sheriff beat him about the head six or seven times with the butt of his shotgun. Both plaintiffs were then placed in a small holding cell within the bullpen and chained together, back to back, in handcuffs. They were left in this position overnight. Putman claimed that because they were unable to use the toilet, he urinated in his pants.

Most of the plaintiffs' allegations were controverted by testimony of other witnesses. Sheriff Gerloff denied having thrown Favors to the floor but claimed that he ordered him to hit the floor and that Favors complied. The Sheriff admitted having struck Putman once on the head with the rubber-covered butt of his shotgun. Gerloff said that he did so to "get his attention," and because he could not see Put-

---

1. The Hon. William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. The complaint also alleged that certain actions by the defendants violated the Eighth Amendment's safeguard against cruel and unusual punishment. Since, however, that Amendment is aimed primarily at protecting rights of those in custody under a judgment of conviction rather than pretrial detainees like these plaintiffs, and since *any* punishment before conviction is prohibited by the Due Proc-

ess Clause, we treat the case as arising under the Fourteenth Amendment and not the Eighth Amendment. See *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Putman v. Gerloff, supra,* 639 F.2d at 418–19. This does not affect our analysis of appellants' claims.

3. Two officers of the Hermann City Police Department joined Gerloff and Crowe during the course of the recapture. They were not named as defendants.

man's hands and did not know whether he might have a weapon. Defendant Crowe admitted that he handcuffed the plaintiffs together with a chain some ten to twenty inches long. Douglas Pellett, who was another prisoner in the jail at the time of the incident, testified that, about thirty minutes after the plaintiffs were chained together, they were able to remove the handcuffs with a key which one of them had concealed on his person. Putman admitted that Favors had hidden in his shoe a key to a pair of handcuffs which they had used in connection with the armed robbery for which they were subsequently convicted. He denied, however, that Favors was able to reach the key and remove the cuffs. There was also admitted into evidence a photograph of the plaintiffs taken shortly after their recapture by a local newspaper editor.

The plaintiff Putman was treated the next day by a local physician, who was not called to testify. Putman said he complained of a head injury and was given aspirin and codeine. He claims to have been plagued by headaches subsequently. Favors neither requested nor received medical attention for the kick in the side he says he received. This injury had no lasting effects, but he claims to have been plagued by nervousness since the incident.

## II.

The plaintiffs first allege the District Court erred in declining to give their proffered instruction number seven relating to civil conspiracy. We would note at the outset that our review of this claim is handicapped by the parties' failure to include either the proffered instructions or the instructions given in the designated record. It is true that "all jury instructions" are among the items included in the appellants' designation of record filed with the District Clerk on May 6, 1982. Nonetheless, the instructions are not part of the record; perhaps they were not filed with the clerk. Moreover, while the plaintiffs' objection to

the court's failure to give this proffered instruction does appear in the transcript, p. 149, the instructions given are not part of the transcript.

■ We find, however, that the failure to give any instruction on civil conspiracy, if error, is not reversible error. This Court has previously indicated that 42 U.S.C. § 1983 may support a charge of civil conspiracy. *Simpson v. Weeks,* 570 F.2d 240, 242–43 (8th Cir.1978), *cert. denied,* 443 U.S. 911, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a "meeting of the minds" or understanding among the conspirators to achieve the conspiracy's aims. *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam). However, " 'it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.' " *Simpson v. Weeks, supra,* 570 F.2d at 242 (quoting *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569, 576 (7th Cir.1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976)). " 'The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts.' " *Id.* at 242–43. The jury's verdict for both of the defendants in this case means either that they simply disbelieved the plaintiffs on their claim of constitutional deprivation, or that they found the defendants acted in good faith and were therefore shielded by the defense of qualified immunity. In either case, the conspiracy instruction, assuming it was an otherwise appropriate one, would not have allowed any recovery against the defendants based simply on the finding that they agreed to act and did act in concert.[4] In

---

**4.** Had the jury found against one of the defendants and not the other, a stronger argument could have been made in favor of the conspiracy instruction. "The charge of conspiracy in

a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible for any overt act or acts." *Hostrop v. Board of Junior*

addition, the appellees' brief, p. 4, states, without contradiction from appellants, that Instructions 6 and 7 as actually given authorized recovery upon a finding that defendants acted in concert. It seems, therefore, that the substance of the civil-conspiracy claim was submitted to the jury.

### III.

■ The plaintiffs raise two additional points which merit little discussion. First, they contend that the evidence was so clear in their favor that the District Court should have directed a verdict against defendants on the issue of liability. Putman and Favors here emphasize the admission by Sheriff Gerloff that he struck Putman once on the head with the butt of his shotgun, and the admission by Deputy Crowe that he handcuffed the plaintiffs and chained them together. Having reviewed the testimony of other witnesses as set out above, we can only say that a jury question was clearly presented as to whether the measures taken were no more severe than was reasonably necessary under the circumstances.

■ Second, plaintiffs argue a new trial should be ordered because the jury entirely misunderstood its function. They point to a note which was sent to the Court by the jurors during their deliberations. The note read: "How was Mr. Putman caught in the feed door bars?" In response to this question, Judge Hungate quite properly instructed the jury that they were the judges of the facts and that it was their duty to decide questions such as this. No more need have been said.

The judgment is affirmed.

College Dist. No. 515, supra, 523 F.2d at 576 (quoting Rutkin v. Reinfeld, 229 F.2d 248, 252

(2d Cir.), cert. denied, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956)).