52 F.3d 1123
 311 U.S.App.D.C. 278
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
 Michael A. ROBERTS, Appellant,
v.
POTOMAC ELECTRIC POWER COMPANY and Local Union 1900,
International Brotherhood of Electrical Workers,
AFL-CIO, Appellees.
 
 No. 93-7211.
 United States Court of Appeals, District of Columbia Circuit.
 March 22, 1995.
Rehearing Denied May 17, 1995.
 Before: WALD, RANDOLPH, and ROGERS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 36(b). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the judgment for defendant Potomac Electric Power Company be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 41.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Michael Roberts appeals the dismissal of his three.count complaint raising labor-related claims against his former employer, Potomac Electric Power Company ("PEPCO"), and the union representing PEPCO's employees, the International Brotherhood of Electrical Workers Local No. 900 ("Local 900"). Roberts v. Potomac Electric Power Co., No. 93-0693 (D.D.C. Sept. 27, 1993). The complaint alleges that the company breached both its collective bargaining agreement and a separate "last chance" agreement with Roberts (Counts I and III) and that the union breached its duty of fair representation by agreeing to employment terms that violated the collective bargaining agreement and by declining to file a grievance regarding Roberts' discharge from employment (Count II). The district court dismissed the complaint on statute of limitations grounds; although the court did not distinguish between Roberts' state and federal claims, its decision rested on the federal labor law statute of limitations. Roberts now contends that (1) his federal claims are not time-barred because he filed suit within six months of the date on which he learned that the union and PEPCO breached a duty by entering the last chance agreements and that the union did not plan to file a grievance over his discharge; and (2) his breach of contract claim against PEPCO is not governed by the federal statute of limitations and therefore should survive a motion to dismiss. We affirm the judgment of the district court.
 
 I.
 
 5
 This dispute involves a series of "last chance agreements" entered between Roberts, PEPCO and Local 900. Roberts initially joined PEPCO as a one-year probationary employee on October 24, 1988. In August 1989, about two months before his scheduled transition from probationary to permanent employment, Roberts committed alleged transgressions which resulted in a short suspension followed by the first of three "last chance agreements" with PEPCO and the union. The last chance agreement extended Roberts' probationary period through March 16, 1990, and defined the terms under which he could maintain his temporary employment. By signing the agreement, Roberts acknowledged that for the duration of the agreement, he could not utilize the grievance procedures available to non-probationary employees and the union could grieve on his behalf only alleged violations of the last chance agreement by PEPCO.
 
 
 6
 According to the complaint,-the first probationary period expired without incident and on March 16, 1990, Roberts became a full permanent employee. On March 30, 1990, however, Roberts committed another infraction, for which he received another suspension and a second offer of a "last chance" agreement. Roberts, Local 900, and PEPCO all signed the agreement, which placed him on an additional six-month probationary period through October 6, 1990. Under the terms of the agreement, Sec. 17.12 of the Collective Bargaining Agreement applied.[1] In October 1990, the parties signed a third last chance agreement, which contained similar terms to the first two and further extended the probationary period to October 6, 1991.
 
 
 7
 Following a hearing in May 1991, Roberts was terminated on May 23, 1991, for violating the October 1990 last chance agreement. Roberts telephoned the Chief Steward of the Union, who advised him to apply for unemployment compensation benefits. More than nine months later, on March 9, 1992, Roberts' counsel sent a letter to PEPCO asking the company to reinstate Roberts. The company responded with a May 8, 1992, letter refusing to reinstate him. Subsequently, on August 26, 1992, and September 25, 1992, Roberts' counsel wrote to the union suggesting that Roberts had received unfair representation from the union and asking the union to exercise its option under the collective bargaining agreement to seek a waiver of the applicable 5-day time limit for filing a grievance over Roberts' discharge.[2] By letter of October 26, 1992, the union informed Roberts that it would take no further action on his grievance and would not seek a waiver of the applicable bargaining procedures. On April 5, 1993, Roberts filed his lawsuit.
 
 
 8
 Roberts does not dispute that the 6-month statute of limitations recognized in DelCostello v. International Bhd. of Teamsters, 462 U.S. 151 (1983), applies to his federal causes of action. See Flores v. Levy Co., 757 F.2d 806 (6th Cir.1985). Instead, he contends that he did not know that Local 900 had breached its duty of fair representation until October 1992, when Local 900 notified Roberts' counsel that it would not exercise its option to petition PEPCO for a variance of the grievance procedure or the time limits for filing grievances. Because his cause of action against the union accrued in October 1992, Roberts argues, he filed his complaint within the six-month statute of limitations applicable to unfair labor practice claims.
 
 
 9
 This court reviews the grant of a motion to dismiss de novo; to uphold the district court's dismissal, it must appear from the face of the complaint that plaintiff knew or should have known of his claims prior to six months before he filed suit. See Doe v. United States Dep't of Justice, 753 F.2d 1092, 1115 (D.C.Cir.1985); see also Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162-63 (2d Cir.1989); cf. Tele-Communications of Key West, Inc. v. United States, 757 F.2d 1330, 1335 (D.C.Cir.1985) (failure to state a claim). From the face of the complaint, it is clear that the district court did not err in concluding that Roberts either knew or should have known of his federal causes of action more than six months before he filed his lawsuit.
 
 
 10
 First, for the claims alleging that PEPCO or Local 900 breached a duty by entering into the last chance agreements, the district court properly found that the statute of limitations had run. Roberts' complaint does not allege any facts to suggest that either the company or the union concealed information from him regarding either the agreements themselves or his employment status prior to entering into the agreements.[3] Nor does he allege that the union had any obligation or right to grieve the terms of the agreements after the parties had signed them. Any breach of duty resulting from the agreements therefore accrued at the time that they were entered into. Cf. United Indep. Flight Officers v. United Air Lines, 756 F.2d 1262, 1273 (7th Cir.1985) ("[c]auses of action based on entry into collective bargaining agreements accrue ... when the contract is signed").
 
 
 11
 Second, Roberts' breach of collective bargaining agreement/breach of duty of fair representation claim, based on the union's alleged duty to pursue grievances after his May 1991 discharge, fares no better. He maintains that the union-had a duty under Sec. 17.09 of the collective bargaining agreement to apply for variance of the deadline for filing grievances and that his cause of action did not accrue until he had "received notification from the Union by letter dated October 26, 1992, that it would not exercise its option to request PEPCO to vary either the grievance procedure or applicable time limits under that procedure." Courts have generally refused to toll the statute of limitations for unfair labor practice claims based on a union's failure to pursue a grievance and have rejected the argument that a continuing failure to pursue grievances constitutes a continuing violation. See, e.g., Harper v. San Diego Transit Corp., 764 F.2d 663 (9th Cir.1985); see also Noble v. Chrysler Motors Corp., 32 F.3d 997, 1001 (6th Cir.1994). Nor can an employee toll the statute of limitations by continually (or belatedly) requesting that the union take further action on its grievance. See Sosbe v. Delco Electronics Div. of General Motors Corp., 830 F.2d 83, 87 (7th Cir.1987) (if the rule were otherwise, " 'a plaintiff could indefinitely delay resolution of labor disputes by merely bombarding his union with tiresome requests' ") (quoting Dozier v. Trans World Airlines, 760 F.2d 849, 852 (7th Cir.1985)). Under these cases, the action accrues when the plaintiff initially learns (or should have learned) that the union would not pursue his grievance.
 
 
 12
 Although Roberts' complaint alleges that he did not learn until 1992 that the union would not pursue his grievance, it does not allege any facts to support a reasonable belief on his part that the union was considering pursuing his grievance before that time. Cf. ACLU Found. of So. Calif. v. Barr, 952 F.2d 457, 472 (D.C.Cir.1991). Absent such allegations, Roberts' claim accrued either five days after his dismissal or on the day that the union steward told him to apply for unemployment compensation. At that time, in the absence of any suggestion from the union that it would pursue his grievance (and absent any allegation in the complaint that he reasonably believed that the union would do so) Roberts was on notice that the union would take no further action on his behalf.
 
 
 13
 Finally, although the district court did not specifically address Roberts' state law breach of contract claim, it is clear that the district court, having dismissed the federal law claims, could properly dismiss the state law claim. 28 U.S.C. Sec. 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988); cf. Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1042 (D.C.Cir.1991); see also Reeve v. Oliver, 41 F.3d 381, 383 (8th Cir.1994).[4]
 
 
 
 [1]
 Section 17.12 provided that "terminations if regular employees during their first year of continuous service and terminations of temporary employees at anytime may not be the subject of a grievance."
 
 
 [2]
 Under Sec. 16.05 of the collective bargaining agreement, the union had to file a grievance within five days of Roberts' dismissal, unless PEPCO and the Union agreed, under Sec. 17.09, to waive the time limits. Section 17.09 provides: "It is agreed that the grievance procedure or time limits may be varied at any time by agreement of the parties when such action appears to be necessary or desirable." Absent such a waiver, Section 17.03 of the collective bargaining agreement makes it clear that an untimely grievance is invalid
 
 
 [3]
 Roberts does imply that he did not know at the time of signing the two 1990 last-chance agreements that his first probationary period had ended in March 1990. He does not, however, allege any facts to suggest that the union or the employer fraudulently concealed from him the end date for his first probationary period; indeed, he acknowledged that the August 23, 1989, last chance agreement (which he/signed) expressly stated that his probationary period would end on March 16, 1990
 
 
 [4]
 Although Roberts suggests in his brief that the district court should have retained jurisdiction over his complaint on the basis of diversity among the parties, as PEPCO points out, and Roberts does not dispute, the complaint does not/allege the requisite elements for diversity jurisdiction